UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LaTesa Callaway,

       Plaintiff,

v.

Academy of Flint Charter School,

       Defendant.

_____/

Case No. 11-13411

Honorable Nancy G. Edmunds

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [25]**

Before the Court is Defendant Academy of Flint Charter School's motion for summary judgment on Plaintiff LaTesa Callaway's Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615, claims against it.  (Dkt. 25.)  Plaintiff alleges that Defendant interfered with and retaliated against her for exercising her FMLA rights.  She alleges that Defendant interfered with her rights when it failed to provide her with FMLA information and leave and then failed to reinstate her to an equivalent position when she returned from her FMLA or what should have been designated as FMLA leave.  She also alleges that Defendant retaliated against her for exercising her FMLA rights by not rehiring her.

Because the Court finds that it must view Plaintiff's allegations as true, and Plaintiff has alleged: (1) that she requested FMLA information and never received it, therefore making her absences non-FMLA leave when she alleges they should have been FMLA approved leave; (2) that when she returned to work, she was not placed in an equivalent position to her former position without a legitimate business reason; and (3) that Plaintiff alleges that Defendant's representative told Plaintiff that she was not rehired because of

questionable attendance, some of which expressly included FMLA leave, the Court DENIES Defendant's motion for summary judgment.

## I.   Facts

Plaintiff alleges that Defendant violated her FMLA rights when it did not provide her with the appropriate documentation regarding her FMLA rights when she took FMLA leave in November, 2009 and then when Defendant failed to reinstate her to her position or an equivalent position when she returned from her leave in November and her leave in early February, 2010.  Plaintiff bases her final FMLA claim on Defendant's failure to rehire her because of her FMLA absences when she allegedly applied and was qualified for the position.

### A. First alleged FMLA leave request

In October, 2009, Plaintiff was working as a sixth grade teacher at Defendant's school.  On October 13, Plaintiff states that she was arranging desks in her classroom when several slivers of wood got stuck in her hand.  (Def.'s Mot. for Summ. J., Ex. A., Oct. 13 Incident Report.)  She states that she was unable to get all of the slivers out and when she visited her doctor on October 15, 2009, he told her that her hand had become infected. (*Id.*)  Plaintiff states that her doctor prescribed penicillin.  (*Id.*)  She adds that she returned to her doctor on October 29, 2009, still in pain, and he referred her to a hand surgeon.  (*Id.*) Plaintiff eventually learned that she was going to need surgery on her hand, which was going to take place in November.

Before her November 17, 2009 surgery, Plaintiff states that she did not fill out any paperwork for FMLA leave.  (Pl.'s Dep. at 91-92.)  Plaintiff does expressly maintain that she requested leave for the November 2009 surgery from Ms. Hendricks, Mr. Duncan, and Ms.

2

Marble.[1]  (*Id.* at 91.)  Plaintiff does acknowledge, though, that she has no documents that would evidence that she requested leave of absence forms from anyone.  (*Id.* at 91-92.)

Plaintiff states she spoke to Ms. Hendricks "[m]aybe six" times, Mr. Duncan "four times," and Ms. Marble "three times."  (Pl.'s Dep. at 92.)

Plaintiff states she understood Defendant's FMLA process to be that she was supposed to talk to Ms. Hendricks, the human resources specialist, to request FMLA paperwork or any type of leave and then Ms. Hendricks would talk to Mr. Duncan or Ms. Marble to 'clear' the leave.  (*Id.* a t93.)  Plaintiff states that she gave thirty days notice for her November, 2009 leave.  (*Id.* at 144.)  Despite giving notice, Plaintiff states that she never received FMLA documents from Defendant.  (*Id.* at 160.)

Plaintiff states that, as a result of her hand surgery, she was off from work for about a month.  (Pl.'s Dep. at 114.)  Plaintiff returned to school on December 21, 2009, which the Court discusses more thoroughly below, but then took FMLA leave again in late January, 2010.

**B.  January/February 2010 leave**

Plaintiff needed additional FMLA leave, from January 22, 2010 to February 9, 2010, to remove uterine fibroids.  (Pl.'s Dep. at 114-15.)  She states that she also requested FMLA paperwork for this surgery.  (*Id.* at 115.)   Dr. Nita Kulkarni submitted a note that Plaintiff was unable to work from January 25, 2010 through January 29, 2010, due to Plaintiff's

---

[1]Ms. Carolyn Hendricks was the human resource specialist at the Charter Acadmeny of Flint, Mr. Verdell Duncan was the school's principal, and Ms. LaShema Marble was the school's assistant principal at the time.  (Pl.'s Resp. at 3.)

January 22, 2010 scheduled surgery.  (Def.'s Mot., Ex. G. Kulkarni Note 1.)  Defendant approved the time requested as FMLA leave on January 21, 2010.  (Def.'s Mot., Ex. H, Defendant FMLA Approval Letter.)  Dr. Kulkarni saw Plaintiff again on February 8, 2010.  (Def.'s Mot., Ex. I, Kulkarni Note 2.)  Dr. Kulkarni wrote that Plaintiff was cleared to return to work on February 9, 2010.  (*Id.*)

Plaintiff states that she "probably" sent an email stating that she needed to either get short-term disability or FMLA paperwork submitted because she had some reoccurring appointments for medical reasons after her January/February 2010 leave.[2]  (Pl.'s Dep. at 210-11.)  She adds that she did not save a copy of the email.  (*Id.* at 211.)

### C. Plaintiff's change to a Title One teacher in late December and upon her return in February

Defendant states that at the beginning of the 2009-2010 school year Plaintiff was the classroom teacher and Ms. Lane was a Title One teacher.  (Def.'s Mot., Ex. D, Jackson Aff. ¶ 4.)  Defendant states that both Ms. Lane and Plaintiff were teachers in the classroom.  (*Id.* ¶ 4.)  Defendant further states that they both had the same space in which to store their personal belongings during the day.  (*Id.* ¶ 5.)  Defendant further explains that the Title One teacher is supposed to be paid out of Title One funds.  (*Id.* ¶ 6.)  And Defendant also explains that a Title One teacher's focus is supposed to be on the students in the classroom that need supplemental help.  (*Id.*)  Defendant states that when Plaintiff returned from leave on December 21, 2009, she was "made" the Title One teacher, while Ms. Lane, who had been teaching Plaintiff's class in Plaintiff's absence, remained the classroom

---

[2]Plaintiff alleges that she sent this email to Ms. Hendricks, the person to whom Plaintiff further alleges such emails were to be directed.  (Pl.'s Dep. at 211-12.)

4

teacher.  (*Id.* ¶ 7.)  Defendant states that Plaintiff signed documents acknowledging that she was to be the Title One teacher.  (*Id.* ¶ 8.)  And Defendant states that Plaintiff's salary did not change and that she did not become an hourly worker.  (*Id.*)

Plaintiff states that, on February 9, 2010, she returned to work from her second medical leave.  ( Pl.'s Dep. at 119-120.)  When she returned, she maintains that she was again relegated to a Title One teacher, that she became an hourly teacher, and that her pay went down, which was reflected in her in her pay stubs.[3]  (*Id.* at 120.)  Plaintiff states that her duties changed when she returned.  Before her surgery, Plaintiff says she was a Sixth Grade teacher.  (*Id.* at 130.)  After, she states that she was not teaching in a class, and instead was "answering phones," "signing kids in," hanging stuff up in the hall," or "running memos." (*Id.*)  She adds that she also served ice cream and swept the floors, both things she did not have to do before she was a Title One teacher. (*Id.* at 124.)  She further states that when she was in a classroom after her return, she was only assisting in someone else's room.  (*Id.* at 130.)

Plaintiff states that she spoke with Ms. Marble about returning to her previous position.  (*Id.* at 118.) Plaintiff states that over her first several days back, Ms. Marble, Mr. Duncan, and Ms. Hendricks all told her that she would not be returning to her classroom anytime soon.  (*Id.* at 119.)   Plaintiff states that her pay went down and that she became an hourly worker.  (*Id.* at 120.)  Although she adds that she has no documentation reflecting the decrease in pay.  (*Id.* at 121.)

---

[3]   Defendant states that, effective January 1, 2010, it decreased all employees' pay by five percent.  (Jackson Aff. ¶ 11.)

Plaintiff alleges that, "it was a known practice at Academy of Flint . . . that if you cannot handle . . . your classroom, before you were fired, unless you did something totally abrupt you were knocked down to Title One assisting."  (Pl.'s Dep. at 123.)

Plaintiff further alleges that she felt that she was being penalized for her FMLA leave, because she was essentially 'demoted.'  (*Id.* at 124.)

### D. Plaintiff's subsequent absences

Defendant argues that Plaintiff had other absences for which she did not seek leave. Plaintiff argues that she sought leave for these additional absences and she has submitted some doctors' notes for some of the time Defendant alleges was unexcused.

Defendant has submitted Plaintiff's time and attendance report for January 4, 2010 to January 16, 2010.  (Def.'s Mot., Ex. K, Time and Attendance Sheet.) This sheet shows that Plaintiff was late every day and also left early every day, save for one day. (*Id.*)

Plaintiff has submitted notes from Dr. Syed Sattar in March and April, 2010, showing that Plaintiff was seen by Dr. Sattar and received prescriptions. (*Id.*)

Defendant states that Plaintiff missed an entire week of work from April 23, 2010 to April 30, 2010, "without calling in or otherwise advising her supervisor of her absence." (Def.'s Mot., Ex. F, Crutchfield Aff. ¶ 5.)  Defendant further states that, on May 3, 2010, Plaintiff was given a warning for her absenteeism for the week she missed.  (*Id.* ¶ 6.)  (See also Def.'s Mot., Ex. J., Notice of Excessive Absences.)

Plaintiff alleges that, from April 23 to April 30, she was being treated for irritable bowel syndrome, "which is arguably a serious health condition under the FMLA."[4] (Pl.'s Resp. at 15, n 5.)  Plaintiff has submitted doctors' notes from this week, stating that Plaintiff was seen by the doctors.  (Pl.'s Resp., Ex. 4, Doctors' Notes.)  The April 28, 2010 note shows that Dr. Sattar saw Plaintiff.  (*Id.*)  The April 29 note shows that Dr. Kulkarni saw Plaintiff for female menstruation issues.  (*Id.*)

On Mary 25, 2010, Plaintiff saw a doctor for carpal tunnel.  (*Id.*) On June 1, 2010, Dr. Ohm saw Plaintiff again, gave her an injection for her hand and cleared her to return to work on the same day.  (*Id.*)

Plaintiff argues that Defendant "has not produced one witness with personal knowledge who can testify that [Plaintiff's] absences were not related to her serious health condition, or that she ever missed work without notifying her employer." (Pl.'s Resp. at 15.)

### E.  Defendant terminates all employees and the rehiring process

After the 2009-2010 school year, Defendant represents that it decided to terminate all of its teachers and delegate rehiring teachings to a human resources company.  The parties dispute the information imparted regarding the rehiring process for the 2010-2011 school year, when Michigan Education Personnel (MEP), a human resources company, took over the rehiring of teachers.  Plaintiff alleges that Defendant represented that all the former teachers would be rehired if the teachers reapplied and went through the interview process.  Defendant argues that it told all the teachers that they would have to fill out an

---

[4]The Court notes that Plaintiff does not support the irritable bowel syndrom argument with any medical slips.  One medical slip does reference "amenorrhea," but that is the absence of menstruation, and not related to the bowel system.

application and go through the application process if they wanted to be rehired, but made no guarantee that every teacher would be rehired.

### 1. Defendant's version

Defendant maintains that, in March, 2010, its board adopted a resolution that Defendant would not renew any staff and that it was directed to notify the staff of the nonrenewal. (Jackson Aff. ¶ 18.) That spring, Defendant alleges that it sent out the nonrenewal notices. (*Id.* ¶ 19.) At the end of that school year, Defendant terminated all of its personnel, including Plaintiff. (*Id.* ¶ 21.) Defendant maintains that it advised all the terminated employees that they would have to re-apply through the new human resources provider if they wanted to work for Defendant for the 2010-2011 school year. (*Id.* ¶ 22.) Defendant reports that there was a two-step application process to be re-hired–an application and an interview. (*Id.* ¶ 23.) Defendant states that any teacher who previously worked for it and filled out an application was guaranteed an interview, but not a position. (*Id.* ¶ 24.) Defendant maintains that Plaintiff never filled out the required application. (*Id.* ¶ 25.) Defendant states that Plaintiff alleges that she did turn in the application, to a Ms. Wesley, whom Defendant states was a lunchroom aide. (*Id.* ¶ 26-27.)

Ms. Crutchfield states that she interviewed Plaintiff for Plaintiff's return to work, although Plaintiff never completed an application. (Crutchfield Aff. ¶¶ 13, 16.) Ms. Crutchfield also stated that she did not recommend Plaintiff to be hired again, because there were others "more qualified." (*Id.* ¶ 15.) On April 23, 2010, Defendant notified Plaintiff that it would not be rehiring her as a teacher for the next school year. (Def.'s Mot., Ex. M, Notification Letter.)

### 2. Plaintiff's version

Plaintiff maintains that MEP and Defendant informed the teachers that "all the teachers would be coming back." Plaintiff alleges that the change in the human resources department was just a change of management. (Pl.'s Resp., Ex. 1, Pl.'s Dep. at 56.) She further states that if she wanted to come back that she had to fill out the application by the deadline. (*Id.*) She adds that she turned the application in by the deadline to "Ms. Wesley," "who worked in the office." (*Id.* at 57.) She states that "Ms. Wesley" confirmed the receipt of the application by making a copy and then giving the copy back to Plaintiff. (*Id.*)

Plaintiff represents that, after she learned that she would not be returning for the 2010-2011 school, she called Mrs. Crutchfield to find out why she would not be returning. (Pl.'s Dep. at 138.) Plaintiff recounts the conversation:

> [Mrs. Crutchfield] said she remembered who I was, she said [the failure to rehire] came down to - - this is her verbatim, **it came down to questionable attendance**.

(*Id.*) (emphasis added).

### 3. Elnora Crutchfield's testimony

Elnora Crutchfield states that she interviewed Plaintiff on July 16, 2010. (Pl.'s Resp., Ex. 6, Crutchfield Dep. at 25.) Crutchfield states that she did not recommend Plaintiff for a position for the 2010-2011 school year because Plaintiff indicated that she wanted to teach fifth through eighth grade, and Crutchfield maintains that that position was already filled. (*Id.*)

Crutchfield maintains that she made her recommendation based on Plaintiff's preference and not at all on Plaintiff's attendance issues. (Crutchfield Dep. at 29.) Crutchfield further adds that she was not aware of any attendance issue. (*Id.* at 30.)

Crutchfield stated in her deposition that she did not know whether Plaintiff missed the

9

week of April 23-30, 2010, because she was not in in the mornings.  (Crutchfield Dep. at 34.)  And when confronted with her affidavit statements, Crutchfield acknowledged that she was unaware whether her statement in her affidavit was correct.  (*Id.*)

## II.   Summary judgment standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party."  *Hager v. Pike Cnty. Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

## III.    Analysis[5]

---

[5]As an initial matter, the Court notes that there is an issue on which standard applies to Plaintiff's claims: the single-motive *McDonnell Douglas* burden shifting standard or the mixed-motive standard.  The Sixth Circuit has stated that "the standard applicable to employment discrimination claims 'depends not on the type of evidence presented (direct versus circumstantial), but on the type of claim brought (single-motive versus mixed-motive).'" *Grubb v. YSK Corp.*, 401 F. App'x 104 (6th Cir. 2010) (quoting *Hunter v. Valley View Schs.*, 579 F.3d 688, 692, n. 2 (6th Cir. 2009).  The Sixth Circuit has additionally stated that "single-motive and mixed-motive theories are not distinct claims, but rather different ways of analyzing the same claim."  *Griffin v. Finkbeiner*, 689 F.3d 584, 594, n. 7 (6th Cir. 2012).  While a district court must, at some time, determine whether the case involves a mixed-motive or single-motive claim, that decision "may not always occur before the summary-judgment stage, because the nature of an employment-discrimination case will often emerge after discovery or even at trial."  *Id.* (citations and internal quotation marks omitted).

Here, Defendant does not argue that the *McDonnell Douglas* burden-shifting scheme applies to Plaintiff's interference claims, but it does argue that the scheme applies to Plaintiff's retaliation claim.  Some FMLA interference and retaliation claims are subject to the burden-shifting framework that the Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Donald*, 667 F.3d at 761.  If Plaintiff properly pleads a prima facie case, then Defendant bears the burden to show that it had "a legitimate reason unrelated to the exercise of FMLA rights for terminating [Plaintiff.]"  *Donald*, 667 F.3d at 762.  If Defendant shows this legitimate reason, then Plaintiff bears the burden to show that the "proffered reason had no basis in fact, did not motivate the termination, or was insufficient to warrant the termination."  *Id.*

11

The FMLA allows an employee to take a total of twelve workweeks of leave during any twelve-month period if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).[6]  The FMLA prohibits interference with FMLA leave and discrimination because of an employee taking FMLA leave.  Here, Plaintiff has brought forth interference claims and a discrimination claim.

Plaintiff argues that her claims should survive summary judgment because Defendant has not brought forth a legitimate business reason or would have taken the same action regardless of Plaintiff's leave for its failure to reinstate her to her former position and for discriminating against her.

**A.  Interference claims**

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" an FMLA provision.  29 U.S.C. § 2615(a)(1).  The Sixth Circuit has held that an FMLA violation occurs when "an employer takes an

---

Plaintiff, in her response, argues that the mixed-motive standard applies, following from *Hunter v. Valley View Local Schools*, 579 F.3d 688 (6th Cir. 2009).  The Court agrees with Plaintiff on the retaliation claim.  In her complaint, Plaintiff alleges that she was told that her failure to be rehired was "a motivating factor." (Compl. ¶ 13.)  Given this language and the evidence and arguments that Plaintiff has put forth, the Court finds that the mixed-motive standard for her retaliation claim is appropriate here.

As for her interference claims, even if the Court were to analyze her claim under the more rigorous *McDonnell Douglas* scheme, the Court finds that Defendant failed to put forth a proper "legitimate business reason" for not providing Plaintiff leave or not returning her to an equivalent position, as the Court discusses below.

[6]A "serious health condition" is an "illness, injury, impairment, or physical or mental condition that involves - - (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave[.]"  *Donala v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (citations omitted).

To establish a prima facie case of an FMLA interference claim, Plaintiff must show that: (1) she was an eligible employee; (2) Defendant was an FMLA-defined "employer;" (3) Plaintiff was entitled to leave under the FMLA; (4) Plaintiff gave Defendant notice of her intention to take leave; and (5) Defendant denied Plaintiff FMLA benefits to which she was entitled.  *Donald*, 667 F.3d at 761 (citations omitted).

If Defendant can show it had a "legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct" then Defendant did not interfere with Plaintiff's rights.  *White v. Telcom Credit Union*, ___F.Supp.2d___, 2012 WL 2324393 at *11 (E.D.Mich. June 19, 2012) (Edmunds, J.)

### 1. Failure to provide leave

Plaintiff alleges that she requested FMLA information and FMLA leave from Defendant and that Defendant did not provide her with leave.

"When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days[.]" 29 C.F.R. § 825.300(b)(1).  "Failure to follow the notice requirements set forth in [§825.300] may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights."  29 C.F.R. § 825.300(e).  But "[a]n employer's failure to comply with the notice requirements of the FMLA only supports a cause of action where 'the inadequate

13

notice effectively interfere[s] with plaintiff's statutory rights.'" *Fink v. Ohio Health Corp.*, 139 F.App'x 667, 671 (6th Cir. 2005) (insertion in *Fink*) (citation omitted).

Plaintiff alleges that she requested FMLA documents at least thirteen times from Defendant's representatives.  (Pl.'s Dep. at 92.)  She also alleges that she emailed a request for FMLA information.  (Pl.'s Dept. at 211.)

Defendant argues that Plaintiff cannot show it denied her FMLA leave. (Def.'s Mot. at 10.) Defendants categorizes Plaintiff's time off in two leaves related to her two surgeries. (*Id.*)   Defendant argues that Plaintiff cannot have any claims concerning the January/February 2010 leave because it approved her leave.  (*Id.*)  Defendant then addresses Plaintiff's November/December 2009 leave for her hand surgery.  (*Id.*) Defendant argues that Plaintiff received short term disability benefits, and those disability benefits provided more benefits than FMLA would have, therefore Plaintiff cannot succeed on her failure to provide leave claim.  (*Id.*)  Defendant alternatively alleges that, even if Plaintiff's first leave could have qualified for FMLA leave, she has not shown "some kind of harm from the [FMLA] violations."  (Def.'s Mot. at 11.)

Plaintiff argues that, regardless of whether she received short-term disability, which she disputes, she can show harm in the fact that she was not provided FMLA benefits, such as being returned to an equivalent position upon her return from FMLA leave.

Here, the Court agrees with Plaintiff.  She has alleged that she requested FMLA leave and that it was not provided to her.  She has alleged harm from the failure to receive leave. As the Court discusses below, she alleges that she was not returned to an equivalent position upon her return from FMLA leave and she alleges that she was not rehired

14

because of "questionable absences," some of which included FMLA approved leave or leave that Plaintiff maintains should have been FMLA leave.  *See Byron v. St. Mary's Med. Ctr.*, 11-13445, 2012 WL 3966090 (E.D.Mich. Sept. 11, 2012) (denying the defendant's motion for summary judgment on the plaintiff's interference claim because the plaintiff alleged that she put the defendant on notice that she needed FMLA leave.)  *See also Thomas v. Bala Nursing & Ret. Ctr.*, 11-5771, 2012 WL 2581057, at *12 (E.D.Pa. July 3, 20120) (finding summary judgment inappropriate because the plaintiff stated in a deposition that she requested medical leave and that request was "reasonably adequate" to put the defendant on notice.").

The Court therefore denies summary judgment on this claim.

### 2.  Failure to reinstate

Plaintiff alleges that when she returned to work after her two surgeries she was not returned to an equivalent position.

The FMLA requires an employer to reinstate an employee who has taken FMLA leave to her previous position or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."  29 U.S.C. § 2614(a)(1)(A) and (B). An "equivalent position" is one that is "virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites  and status.  It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority."  *Grace v. USCAR*, 521 F.3d 655, 669 n. 13 (6th Cir. 2008).

Here, Plaintiff has met her burden to show that she was not returned to an equivalent

position.   Plaintiff testified that her duties changed when she returned.  Before her surgery, Plaintiff says she was a sixth grade teacher.  (*Id.* at 130.)  After, she states that she was not teaching in a class, and instead was "answering phones," "signing kids in," hanging stuff up in the hall," or "running memos." (*Id.*)  She adds that she also served ice cream and swept the floors, both things she did not have to do before she was a Title One teacher. (*Id.* at 124.)   She further states that when she was in a classroom, she was only assisting in someone else's room.  (*Id.* at 130.)   These allegations are sufficient to withstand a motion for summary judgment arguing that she was returned to an equivalent position.  For the Court views Plaintiff's testimony as showing that Plaintiff's duties and status changed upon assignment to a Title One teacher, regardless of the label of "teacher" and regardless of her pay.  *See Donahoo v. Master Data Center*, 282 F.Supp.2d 540, 552 (E.D.Mich. 2003) (Edmunds, J.) (finding that the position that plaintiff was returned to was not equivalent in status, as a data entry job was not as sophisticated and did not require a similar level of training or education.).

Defendant argues that Plaintiff was returned to an equivalent position–for she remained a teacher and received the same pay.  (Def.'s Mot. at 11.)  Defendant goes so far to say that Plaintiff's Title One position "arguably required more skill to bring underachieving students up to grade." (*Id.*)  The Court rejects Defendant's argument given Plaintiff's testimony.

The burden therefore shifts to Defendant to offer a  reason unrelated to FMLA leave for its action. Defendant argues that "[e]ven if [Plaintiff's] assertion that she were not returned to an equivalent job] . . . it's clear that Plaintiff's habitual tardiness prevented

[Defendant] from entrusting an entire classroom to Plaintiff." (*Id.* at 11-12.)

Aside from that statement, Defendant has not offered any further explanation for Plaintiff's appointment to a Title One teacher upon her return.  While Defendant has submitted time and attendance sheets for Plaintiff from January 4, 2010 to January 16, 2010 that show that Plaintiff did arrive late the majority of the days, the Court notes that Plaintiff was put into the Title One position before those dates.  (Def.'s Mot., Ex. K, Time and Attendance Sheet.) And given Plaintiff's representations that she requested FMLA leave before her first leave and that Defendant has not defined what it means by "habitual tardiness," the Court finds summary judgment is not appropriate on this claim.

### B. Retaliation claim

The FMLA also prohibits employers from discharging "or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by this subchapter."  29 U.S.C. § 2615(a)(2).

To establish a prima facie case of retaliation, Plaintiff must show that: (1) she was engaged in an activity protected by the FMLA; (2) Defendant knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, Defendant took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Donald*, 667 F.3d at 761 (citation omitted).

Plaintiff alleges that she has brought forth direct evidence of discrimination.  The Sixth Circuit defines "direct evidence" as "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's

17

actions." *Schweitzer v. Teamster Local 100*, 413 F.3d 533, 537 (citation omitted).   Put another way, "direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice."  *Id.* (citation omitted).

"The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity."  *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274 (6th Cir. 2012) (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)).

"Once there is credible direct evidence, the burden of persuasion shifts to the defendant to show that it would have terminated the plaintiff's employment had it not been motivated by discrimination."  *Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921 (6th Cir. 1999).   "[D]irect evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice[.]"  *Johnson v. Kroger Co.*, 319 F.3d 858 (6th Cir. 2003).

Plaintiff argues that *Hunter v. Valley View Local Schools*, 579 F.3d 688 (6th Cir. 2009) supports her claim that Defendant retaliated against her for her FMLA leaves.   In *Hunter*, the plaintiff presented testimony that the defendant put the plaintiff on involuntary leave both because of the plaintiff's permanent medical restrictions and also because of her "excessive absenteeism," which was based on a review of the plaintiff's attendance record, which included her FMLA leaves.   579 F.3d at 692.   The Sixth Circuit held that this

18

testimony constituted "direct evidence of impermissible motive because an employer 'cannot use the taking of FMLA leave as a negative factor in employment actions.'" *Id.* at 692-93 (citing 29 C.F.R. § 825.220(c).). The Sixth Circuit found that, because the plaintiff presented evidence of improper motive–the consideration of FMLA leave in a review of attendance, on which the defendant made an adverse employment action–the burden shifted to the defendant to prove by a preponderance of the evidence that it would have put the plaintiff on involuntary leave regardless of the FMLA leave. *Id.* at 693. In *Hunter*, the Sixth Circuit also rejected the defendant's argument that it could consider the plaintiff's complete attendance record in making its decision to put the plaintiff on involuntary leave. *Id.* at 693-94 The Sixth Circuit stated that that type of decision was "precisely what Congress forbade employers to do when it enacted the FMLA." *Id.* (citation omitted).

The Court finds that Plaintiff has made allegations in line with *Hunter*. Plaintiff explains her conversation when she called to find out why she was not rehired for the 2010-2011 school year:

> [Mrs. Crutchfield] said she remembered who I was, she said [the failure to rehire] came down to - - this is her verbatim, **it came down to questionable attendance**.

(Pl.'s Dep. at 138.)  Plaintiff adds,

> And I wasn't rehired for the 2010/2011 school year because of questionable attendance because from my FMLA leave, which I never got the paperwork for, I had to leave to go to doctors' appointments, therapy, injections, scans, x-rays, whatever and that was seen as questionable attendance.

 (*Id.* at 136.)  And finally, in support of her argument, she states,

> Ms. Cructchfield didn't know where to look for me when she was trying to find

19

out . . . . .I guess she would never be able to find me so she typed up this letter and kind of was like a verbal warning but it had a written warning at the same time about my absences . . . for therapy and doctors' appointments from my surgeries I was told to give the documentation to Ms. [Hendricks] because she was H.R., she would put it in the file.  That's what I did on every occasion, I would make sure I got something from the doctor or hospital to give to Ms. [Hendricks] and Ms. Crutchfield took that as a negative attendance record and that's what she put on that letter that she wrote, the write-up she gave me, and then later on when I interviewed and didn't get called back she told me it was questionable attendance.  (Pl.'s Dep. at 139.)

As in *Hunter*, Plaintiff has put forth testimony that Defendant told her all teachers would be hired and that the reason that she was not rehired was "questionable attendance."  Some of that "questionable attendance" could have been Plaintiff's FMLA approved leave or, again as Plaintiff alleges, should have been FMLA approved leave.  Plaintiff has made the representations necessary to survive summary judgment.

Defendant argues that it had a legitimate reason for terminating Plaintiff and then not rehiring her.  (Def.'s Mot. at 12.)  Defendant explains its reasons for not renewing Plaintiff's contract: the severe economic climate; the need to increase the student-teacher ratio; Plaintiff's failure to complete the application; and the existence of more qualified candidates.  (*Id.*)  Defendant maintains that it has supplied the board resolution, "issued three months before Plaintiff's employment was not renewed, setting forth the requirement to place all staff on notice of the non-renewal of their contracts."  (*Id.*)(citing Def.'s Ex. L.) Defendant further maintains that it gave Plaintiff notice of nonrenewal in an April 23, 2010 letter.  (*Id.*) (citing Def.'s Ex. M.)

While Defendant has offered legitimate reasons for not rehiring Plaintiff, in this mixed-motive claim, which prohibits illegitimate reasons for adverse employment decisions even in the midst of legitimate reasons, the Court finds that Plaintiff's offered testimony is

sufficient to withstand this summary judgment motion.

Defendant attempts to rebut Plaintiff's argument, alleging, "[Plaintiff] will contend that Ms. Crutchfield told her that her excessive absenteeism played a role in the decision, which Ms. Crutchfield denies, but even accepting that [contention] as true, Plaintiff had excessive absenteeism that was not FMLA-related." (Def.'s Mot. at 13.)   Defendant adds that "Plaintiff claims that she was disciplined for having to attend FMLA-related doctors' appointments, and was given a written warning . . . but again, this memo was given to Plaintiff immediately after she failed to show up for work for an entire week without giving any notice." (*Id.*)   But again, Plaintiff alleged she gave the proper notice, the Court is required to view the facts in a light most favorable to her.

The Court therefore finds that Plaintiff has created an issue of fact on whether Defendant impermissibly considered FMLA in its failure to rehire her.

## IV.   Conclusion

For the above-stated reasons, the Court DENIES Defendant's motion for summary judgment.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  October 23, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 23, 2012, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

21